MARION VAN DYKE and ALMEDA VAN DYKE
FENTRESS, Apellants, v. HUGH T. INMAN and
TRUST COMPANY OF GEORGIA, Executors and
Trustees of Estate of EDWARD H. INMAN, Atlanta,
Georgia, DOROTHY VAN DYKE SELTZER, R. D.
VAN DYKE, JR., AND MRS. ANN VAN DYKE
POTTS, SR., Appellees.—362 S. W. (2d) 795.

Western Section. August 30, 1962.

Certiorari Denied by Supreme Court November 28, 1962.

494

495

W. H. Fisher, Carlton N. Wilkes, and Joseph W. Evans, Memphis, for appellants.

Thomas F. Johnson, Memphis, Armstrong, McCadden, Allen, Braden & Goodman, Memphis, of counsel for appellees.

BEJACH, J. This cause involves an appeal by Miss Marion Van Dyke and Mrs. Almeda Van Dyke Fentress, who were complainants in the lower court, from a decree of the Chancery Court of Shelby County dismissing their suit against the Trust Company of Georgia, Dorothy Van Dyke Seltzer, R. D. Van Dyke, Jr. and Mrs. Ann

Van Dyke Potts, Sr. The parties will hereinafter be referred to as complainants and defendant or called by their respective names. The term defendant is used in the singular and applies to the Trust Company of Georgia. The other defendants are not involved on this appeal except to the possible extent that any decree recovered by complainants might inure to their benefit.

The bill in this cause was filed by complainants on July 7, 1959, seeking to have a warranty deed, executed May 19, 1925 by Sue G. Van Dyke and R. D. Van Dyke, mother and father of complainants, to Edward H. Inman, declared to be a mortgage, and for other incidental equitable relief. Hugh T. Inman, son of Edward H. Inman and joint executor of his will, along with the Trust Company of Georgia, filed a plea in abatement in which he set up that he was not a proper party to the suit, because the estate of Edward H. Inman had been fully administered and the executors thereunder had been discharged. By consent, said plea in abatement was sustained and Hugh T. Inman was dismissed from the suit. He is not before this court on the appeal. The Trust Company of Georgia filed an answer and cross bill. In its answer, it sets up that the property involved in this suit, which was conveyed by the residuary clause of the will of Edward H. Inman, had been conveyed to it as trustee for Emily McDougal Inman, widow of Edward H. Inman and mother of Hugh T. Inman. It set up numerous defenses to the claims asserted by complainants. In its cross bill, it sought a decree validating its absolute title as trustee for Mrs. Emily McDougal Inman and the removal of the claims asserted by complainants, as a cloud on that title. Dorothy Van Dyke Seltzer and Ann Van Dyke Potts, sisters of complainants, and R. D. Van

Dyke, Jr., their brother, did not join with complainants in this suit and were, therefore, properly made defendants. The defendant, Trust Company of Georgia, also made them defendants to its cross bill. Process was served on the defendants, Dorothy Van Dyke Seltzer and R. D. Van Dyke, Jr., pursuant to complainants' bill, but as to Ann Van Dyke Potts, the Sheriff's return was that she was not to be found in Shelby County. The record shows no pro confesso judgment by complainants against either Dorothy Van Dyke Seltzer or R. D. Van Dyke, Jr. Process was served on Dorothy Van Dyke Seltzer, R. D. Van Dyke, Jr. and Ann Van Dyke Potts pursuant to the cross bill of defendant, Trust Company of Georgia, and pro confesso judgments were duly taken against all of them.

The Chancellor filed a memorandum opinion which was made part of the record of this cause. He dismissed complainants' bill, on the ground that the evidence by which they sought to convert the deed of May 19, 1925 into a mortgage was not clear, cogent and convincing. The decree also granted the prayers of the cross bill and validated the title of defendant Trust Company of Georgia. Complainants excepted to the decree and have perfected their appeal to this court. In this court, they have filed two assignments of error which are as follows:

"ASSIGNMENTS OF ERROR

"I.

"The Court erred in finding and holding that complainants failed to establish by sufficient evidence a contemporaneous agreement on the part of Edward H. Inman to hold the property in trust for complainants' mother and themselves. R. 44-45.

"This is error because:

"1. It overstates the issue. Complainants merely inherited whatever equity their mother had, and claimed no trust for themselves otherwise.

"2. The issue of whether or not the deed was a mortgage in its beginning is most clearly established by documentary evidence, being clear, cogent and convincing.

## "II.

"The Court erred in not recognizing the equities in the case, and in denying relief under this bill, and in dismissing same. R. 44-45."

Before disposing of the above quoted assignments of error or considering this cause on its merits, we must first dispose of two preliminary motions made by counsel for defendant, Trust Company of Georgia.

First, there is a motion to strike the Bill of Exceptions. This motion is based on the failure to include in the deposition of Mrs. E. H. Inman Exhibit I thereto. In reply to this motion, counsel for complainants set out that Mrs. E. H. Inman (Mrs. Emily McDougal Inman) testified in this case by deposition, and that the exhibit in question was not filed with the deposition, but was filed by defendant at the hearing, at which time it undertook to have same made part of the record, without specific incorporation of same into the deposition as such. We think this objection is sound. Gibson's Suits in Chancery (5th Ed.) sec. 1277 and sec. 1352; sec. 27-104 T. C. A.; Rose v. Brown, 176 Tenn. 429, 143 S. W. (2d) 303, and Lyon v. Crabtree, 16 Tenn. App. 42, 64 S. W. (2d) 24.

█ It seems to us, therefore, that the exhibit referred to in defendant's motion was not a part of the deposition as filed. If it became so by reason of defendant's introduction of same at the hearing, then it, along with the deposition itself, became a part of the record. If defendant considered that exhibit material, or necessary for its presentation of its case in this court, then its remedy was to have same sent up by means of suggestion of diminution of the record. We do not consider the exhibit material, and, therefore, will not delay decision of the case in order to give defendant an opportunity to suggest diminution of the record. The motion to strike the Bill of Exceptions is overruled.

█ The second motion made by defendant is one to dismiss complainants' appeal. This motion is based on the failure of complainants to obtain service on Mrs. Ann Van Dyke Potts and on their failure to obtain judgments pro confesso against defendants Dorothy Van Dyke Seltzer and R. D. Van Dyke, Jr. We think that all three of these named defendants were necessary parties to this suit. Gibson's Suits in Chancery (5th Ed), sec. 101. The failure to take judgments pro confesso against defendants R. D. Van Dyke, Jr., and Dorothy Van Dyke Seltzer might be overlooked as mere irregularities; but the failure to obtain service on defendant Ann Van Dyke Potts would, in our opinion, have been fatal, but for the fact that she, as well as Dorothy Van Dyke Seltzer and R. D. Van Dyke, Jr., were served with process and brought before the court on the cross bill of defendant Trust Company of Georgia. It is our opinion that, inasmuch as they were before the court on process issued by defendant and cross complainant, with pro confesso judgments duly taken against them, they would have been bound by

any decree favorable to complainants and unfavorable to defendant Trust Company of Georgia, just as they are now bound by the judgment actually entered which was in favor of the Trust Company of Georgia and unfavorable to the complainants, Marion Van Dyke and Almeda Van Dyke Fentress. Defendant's motion to dismiss complainants' appeal is therefore denied.

This brings us to the merits of the case, which we will now discuss. Edward H. Inman, deceased, was the nephew of R. D. Van Dyke, father of complainants Marion Van Dyke and Almeda Van Dyke Fentress, and of defendants Dorothy Van Dyke Seltzer, R. D. Van Dyke, Jr. and Ann Van Dyke Potts. He was married to Sue G. Van Dyke, their mother. For some time prior to 1917, R. D. Van Dyke and his family resided near Millington, Shelby County, Tennessee, on a farm, the title to which was registered in the name of Edward H. Inman. The proof shows that Edward H. Inman paid the cash payment on the purchase price for said farm and assumed an indebtedness of $3,000, and that he executed his personal notes in the amount of $4,500 for the balance of the purchase price, which he secured by a deed of trust. The Millington farm was sold in 1917 by Edward H. Inman and his wife, Emily Inman. All of the proceeds of the sale were forwarded to Edward H. Inman by R. D. Van Dyke. The proof shows that the Van Dyke family moved to Georgia, but later returned to Memphis, Tennessee. On July 12, 1920, Mrs. Sue G. Van Dyke obtained a deed to the real estate involved in this law suit, same being located at 2023 Union Ave., Memphis, Tennessee. It was deeded by Kitty Ramsey Talley. At the time the property at 2023 Union Ave., Memphis, Tennessee was purchased, Edward H. Inman wrote to R. D. Van Dyke as follows:

"Dear Uncle Rob—When you take a deed for the house you have bought have some drawn to R. D. V. for life then to Sue G .V. for life. Draw on me with deed attached so I can see that it is in order. I hold for you 6488.29 Hope you are all well.

"Devotedly

"Edward"

In spite of the above quoted letter, however, title was taken in Sue G. Van Dyke in fee simple. Evidently, Edward H. Inman acquiesced in this variation from his instructions. The purchase price as shown by the closing statement, was $9,160, of which $6,000 was represented by promissory notes executed by R. D. Van Dyke and Sue G. Van Dyke. This note was refinanced in 1923 with S. M. Williamson & Company.

On May 25, 1925, Sue G. Van Dyke and husband, R. D. Van Dyke, conveyed by warranty deed the property here involved to Edward H. Inman. This is the deed which, more than 37 years later, complainants allege was in fact a mortgage. The consideration recited in this deed is $10.00 cash in hand paid by the grantee, and other valuable consideration, including the cancellations of the indebtedness owed by the Van Dykes to the trustees of trust deed to Clark & Williamson, in the amount of $500.00, Edward H. Inman at that time being the owner and holder of said note. The conveyance was made subject to the additional $4,500 indebtedness owed by the Van Dykes, which indebtedness was secured by trust deed on the real property, and was made also subject to all unpaid taxes. Edward H. Inman later discharged said indebtedness, and also the taxes. On August 19, 1925, nearly three months after May 19, 1925, Mr. W. W.

Swift, an attorney practicing in Memphis at that time, who had handled the execution of the deed of May 19, 1925, wrote to E. H. Inman, as follows:

"Dear Sir:

"Your letter of the 18th inst., relative to the Van Dyke property, was duly received this morning. In addition to my letter of May 2d to which you referred, I wrote you fully about the cancellation of the sale on May 19th, to which you replied on May 21st. You will recall that instead of sending this property to sale, under the terms of the trust deed, Mr. and Mrs. Van Dyke agreed to convey the same to you outright. I enclose herewith their deed to you, which has been duly recorded in the Register's Office of Shelby County, Tennessee.

"Mr. Van Dyke has been trying to sell the property, and I have had one or two real estate men on it, and hope that a sale might be had which would result in your getting such money as you have advanced in cash. The real estate men, however, report to me that the house is in a very bad state of repair; that it needs painting, redecorating, and other incidental repairs, which, if made, would put the property in much better condition to sell. The real estate men state to me that they can obtain no offers for the property at all in its present shape, as it is absolutely unattractive. They state, however, that the property is well worth the amount due the S. M. Williamson Co., and the amount of money which you have advanced on the property.

"As the property is now yours absolutely, and you can sell it at any figure you please, I would like to

know if you would care to have an estimate made of the cost of repairing, redecorating and painting the premises. If this is done, I believe that a ready sale could be had of the property. There is another drawback to it, and that is that it has no furnace heat, only grates.

"I notice, from your letter that you have recently paid a note of $100.00 and interest of $125.00, due S. M. Williamson & Co. I will keep those items in mind, and see that you are reimbursed therefor in the event a sale should be made.

"Awaiting your further advice in the matter, I am

"Yours very truly,
"W. W. Swift."

The Van Dyke family moved from the property at 2023 Union Avenue after the conveyance of same to Edward H. Inman and to some extent were separated. In 1927, the defendant, Dorothy Van Dyke Seltzer, wrote to Edward H. Inman and requested permission to return to the Union Avenue property. Permission was granted in a letter dated February 24, 1927, signed by the secretary of Edward H. Inman, in which it was stated that it was the desire of Edward H. Inman to sell the real property for the total amount due on the mortgage, and for an amount sufficient to pay off the investment of Edward H. Inman with any balance to be held by Edward H. Inman for Sue G. Van Dyke. Some of the Van Dyke family then returned to the Union Avenue property and remained there until dispossessed in 1959, after the death of Sue G. Van Dyke, by forcible entry and detainer writ. Edward H. Inman had died in April, 1931. His estate was adminis-

tered by his son, Hugh T. Inman and the Trust Company of Georgia, as executors. Under the will of Edward H. Inman, title to the real property in question was included in the residuary clause. It was later placed in trust for Mrs. Emily McDougal Inman, the widow of Edward H. Inman. The records shows that this was done at the request of Mrs. E. H. Inman, because she desired that Mrs. Sue G. Van Dyke have a home for life. The administration of the Inman estate was closed in July 1948. In May of 1946, an instrument was recorded which shows a transfer of the real property from the estate of Edward H. Inman to the trust created for his widow. A certified copy of the will of Edward H. Inman was recorded in the Register's Office of Shelby County, Tennessee on November 30, 1959, some months after the filing of the bill in the instant case. This property was listed on the Federal Estate Tax Return made by the executors of the estate of Edward H. Inman, and all taxes on the property have been paid by either Edward H. Inman or the Trust Company of Georgia. R. D. Van Dyke died in 1928 and his widow, Sue G. Van Dyke, mother of complainants, died in 1957. Shortly after the death of Sue G. Van Dyke, Appellee, Trust Company of Georgia, began its attempts to have appellants move from 2023 Union Avenue, Memphis, Tennessee, and finally accomplished that objective by forcible entry and detainer writ in 1959.

None of the witnesses offered in behalf of complainants know anything about the transaction incident to the execution of the deed of May 19, 1925. Appellants, in this Court, rely mainly on book entries in the books of Edward H. Inman and on the letter of W. W. Swift quoted above. On the other hand, it is contended that obviously the Van Dykes would not have moved from the property after

execution of the deed of May 19, 1925 if they claimed any interest therein. The evidence shows that the Van Dykes in October 1947 were notified that the real property would be sold by appellant, Trust Company of Georgia, as trustee, when Sue G. Van Dyke died. Also, it is shown that in 1951 the Van Dykes advised the Shelby County Tax Collector that taxes on the property would be paid by appellee, Trust Company of Georgia, and appellant, Marion Van Dyke, herself, advised appellee, Trust Company of Georgia that the property would be turned over to it on the death of Mrs. Sue G. Van Dyke. Appellant, Marion Van Dyke, admitted that she made trips to Georgia in order to obtain aid in having the building repaired and paid for by appellee. She succeeded to the extent of several hundred dollars. Appellants admitted that they had paid no taxes on the property for more than 20 years preceding their ouster.

In addition to pleading laches, defendant, Trust Company of Georgia, has pled the Statutes of Limitation of seven years, ten years, and thirty years, set out in sections 28-201, 28-202, 28-203, and 28-205 T. C. A., as well as title by common law prescription. They also plead the provisions of sections 28-209 and 28-210 T. C. A. which provide that payment of taxes for more than 20 years shall create a prima facie title and that failure to pay taxes for more than 20 years shall bar any adverse claims.

We concur in the Chancellor's ruling that the evidence in this cause falls short of being clear, cogent and convincing in favor of the contentions of complainants, which quality of evidence is required.

It is permissible in Tennessee to show by parole testimony that a deed absolute on its face, was in fact

intended to be a mortgage; but the proof to that effect, must be clear, cogent and convincing, leaving no reasonable doubt as to the real character of the transaction. Pugh v. Burton, 25 Tenn. App. 614, 166 S. W. (2d) 624; Watkins v. Watkins, 160 Tenn. 1, 22 S. W. (2d) 1; Lewis v. Bayliss, 90 Tenn. 280, 16 S. W. 376. The rule followed in these cases is stated in Scott on Trusts (2d Ed.) sec. 40-41, pp. 295-296, as follows:

"In states in which a trust of land can be created without a writing, the courts insist that they will not enforce an oral trust merely because the creation of the trust is proved by the weight of the evidence. They insist that the trust shall be proved by evidence which leaves small doubt of the existence of the trust. They say that the trust must be proved by 'clear and convincing' evidence or that the trust must be proved by evidence which is 'unequivocal'."

■■ As stated above, neither of complainants, nor any witness offered in their behalf, knew anything about the transaction incident to execution of the deed of May 19, 1925. While some of the documentary evidence relied on by complainants tends to show that the Van Dyke family might have had some interest in the property here involved, and that Edward H. Inman would have been entirely satisfied if he could have realized from same all that he had personally expended in connection therewith, nevertheless, proper construction of this documentary evidence does not show unequivocally that either R. D. Van Dyke or Sue G. Van Dyke had any rights therein above and beyond such as were extended by the benevolence of Edward H. Inman. It seems clear from the testimony of Mrs. Emily McDougal Inman that the primary concern of Edward H. Inman, as well as her

own, was to furnish a place of residence for Mrs. Sue G. Van Dyke as long as she lived. This is indicated by the letter of instruction written by Edward H. Inman when he directed that title be taken in R. D. Van Dyke for life with remainder thereafter to Sue G. Van Dyke for life. This attitude, on his part, is emphasized by the circumstance that he acquiesced when the fee simple title was taken in her. The construction of the documentary evidence was, in the first instance, for the lower court; and, on appeal, it is for this court. All of this evidence is, in our opinion, consistent with the theory that whatever interest Sue G. Van Dyke, mother of complainants, might have had in this property, was limited by the extent to which Edward H. Inman was willing to bestow his benevolence. From the record before us it is clear that Edward H. Inman was a wealthy man, and that he contributed liberally towards the welfare of the Van Dyke family, and especially Mrs. Sue G. Van Dyke, his uncle's wife, and of his uncle R. D. Van Dyke, himself, before his death.

██ Laches on the part of complainants is pled as a defense by the Trust Company of Georgia. Counsel for complainants contend that the defendant, rather than the complainants, was guilty of laches. We cannot agree with this contention. In our opinion, Sue G. Van Dyke was the witness who, more than any other, knew what the real situation was, under which she was permitted to remain in property, title to which was in Edward H. Inman. A failure to assert, during her lifetime, the claim now asserted in her behalf by complainants, is sufficient, in our opinion, to warrant sustaining the plea of laches. It has been repeatedly held in Tennessee that a court of equity will not enforce stale demands, where a party or

parties have slept on their rights and acquiesced for an unreasonably long time. Madison v. Ducktown Sulphur, etc. Co., 113 Tenn. 331, 83 S. W. 658; Smith v. Greaves, 83 Tenn. 459; French v. French, Tenn. Ch. App., 52 S. W. 517. Certainly 34 years, the length of time which complainants in the instant case waited, should be held to be an unreasonably long time. It follows that, even if no other defenses were available to defendant, complainants should be barred because of their long delay.

The question of whether or not the evidence offered on behalf of complainants is clear, cogent and convincing, is, in our opinion, a question of law to be decided by the court, Hunt v. Hunt, 169 Tenn. 1, 80 S. W. (2d) 666. We concur in the ruling made by the Chancellor that the evidence in this case does not rise to that dignity. In spite of some tendency to modify the rule announced in Hunt v. Hunt, as indicated by the decision of the Supreme Court in Greenwood v. Maxey, 190 Tenn. 599, 231 S. W. (2d) 315, which cause, as was Hunt v. Hunt, was tried to a jury, we think the ruling made in Hunt v. Hunt is still sound law. This is immaterial in the instant case, however, because in it there was no jury, and it is immaterial whether the Chancellor ruled, as a matter of law, that the proof was not clear, cogent, and convincing or found, as a fact, that it failed to measure up to that standard. The result is the same, in either case. The Chancellor ruled that the proof in this case did not rise to the dignity of being clear, cogent and convincing proof, and we concur in that ruling. The Chancellor did not rule on the defenses of the Statutes of Limitation presented by defendant, which defenses, we think are also conclusive against complainants. Especially do we think that the bar against complainants created by the provisions of

section 28-210 T. C. A., which bars any right of action after 20 years non payment of taxes by complainant, is fatal. Also, the defenses of the Statutes of Limitation presented by the defendant are, in our opinion, insurmountable. The thirty year Statute of Limitations set out in section 28-205 T. C. A. barring any claim after thirty years, and that contained in section 28-212 T. C. A. which bars any equitable lien after ten years, are applicable to the facts of the instant case, and are, in our opinion, insurmountable.

For the reasons hereinabove set out, the assignments of error filed in this court will be overruled and the decree of the lower court will be affirmed.

The costs of the cause will be adjudged against the complainants, Marion Van Dyke and Almeda Van Dyke Fentress.

Avery, P. J., (W. S.), Carney, J., concur.